UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERIC JEROME HUNTER MATHIS,<br><br>    *Plaintiff*,<br>v.<br><br>DEPARTMENT OF JUSTICE *et al.*,<br><br>    *Defendants*. | Civil Action No. 16-1712 (TJK) |

## MEMORANDUM OPINION

Before the Court in this case, which was brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is Defendants' Renewed Motion to Dismiss and for Summary Judgment. *See* ECF No. 28 ("Motion").[1] For the reasons set forth below, the Court will grant the Motion in its entirety.

**I.    Background**

Plaintiff Eric Jerome Hunter Mathis, incarcerated in a state prison in Georgia and proceeding *pro se*, alleges in his complaint that he has been "deprived of his lawful property and rights as a United States citizen." Compl. ¶ 3. Specifically, he alleges that the Department of Justice ("DOJ") is "holding [his] personal and real property[,] personal papers, childhood photo[]s and effect[s] not excluding trust fund[] accounts[,] his patent information, financial accounts (personal, bus[]iness, checking, co[r]porate, and escrow)," *id.* ¶ 4, "inherited assets," *id.* ¶ 5, and benefits he accrued while "working two nine to fives and managing [his] own brake

---

[1] In evaluating Defendants' Motion, the Court considered all relevant filings including: ECF No. 1 ("Compl."); ECF No. 11 ("Am. Compl."); ECF No. 18 ("Pl.'s 1st Opp'n"); ECF No. 19 ("2d Am. Compl."); ECF No. 23 ("3d Am. Compl."); ECF No. 28-1 ("Defs.' SoMF"); ECF No. 28-2 ("Defs.' Br."); ECF No. 31 ("Pl.'s 2d Opp'n"); ECF No. 32 ("Defs.' Reply").

repair shop," *id*. ¶ 6. He contends that DOJ and the Federal Bureau of Investigation (the "FBI") have frozen his bank accounts. *See id*. ¶¶ 7-8.

In October 2015, Hunter Mathis began his quest for information about his assets by submitting a request to the FBI under FOIA. *See id.* ¶¶ 8, 13. DOJ and the FBI allegedly "refused [his] request" and failed to explain "why [his] accounts remain . . . frozen after so much time has passed with no criminal or civil action in the matter." *Id*. ¶ 7. According to Hunter Mathis, DOJ and the FBI not only denied his FOIA requests improperly, *see id.* ¶¶ 7-9; Am. Compl. ¶ 12, but in so doing, also violated his rights under the Fourth, Fifth and Sixth Amendments to the Constitution, *see* Compl. ¶¶ 14, 16-18; Am. Compl. ¶¶ 19-22. He demands a declaratory judgment "that the acts and omission[s] . . . described [in the complaint] violated plaintiff[']s rights under the Constitution," Compl. ¶ 20, and injunctive relief "enjoin[ing] Defendant from withholding the information requested," *id*. ¶ 21.

As his subsequent amended complaints reflect, Hunter Mathis then expanded his search for information by allegedly directing FOIA requests to several other entities: the Internal Revenue Service ("IRS"), a component of the Department of Treasury ("Treasury"), *see* 2d Am. Compl. ¶ 10, the Department of Defense ("DoD"), *see id*. ¶¶ 7, 11; 3d Am. Compl. ¶¶ 20, 31, the Securities and Exchange Commission ("SEC"), *see* 3d Am. Compl. ¶¶ 17, 27, the United States District Court for the Middle District of Georgia, *see id*. ¶¶ 18, 28, the Social Security Administration ("SSA"), *see id*. ¶¶ 19, 29, and the American Red Cross, *see id*. ¶ 30. The Court is obliged to construe a *pro se* litigant's pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). To this end, the Court construes Hunter Mathis's various complaints collectively, and as raising FOIA claims against each of these entities.

II. Analysis

A. Defendants' Motion to Dismiss

For the reasons explained below, the Court will dismiss Hunter Mathis's (1) constitutional claims; (2) claim against the Middle District of Georgia; and (3) claim against the American Red Cross.

1. Hunter Mathis's Constitutional Claims

Although Hunter Mathis alleges violations of his rights under the Fourth, Fifth and Sixth Amendments to the United States Constitution, *see* Compl. ¶¶ 14, 16-18; Am. Compl. ¶¶ 19-22; 3d Am. Compl. ¶ 33, he clarifies elsewhere that "this is not a 1983 suit[] or[] civil rights complaint," Pl.'s 1st Opp'n at 4; Pl.'s 2d Opp'n ¶ 26. In fact, the claims he brings are grounded in FOIA, and it is well settled that "FOIA does not offer a remedy for alleged violations of constitutional rights arising from the handling of a FOIA request." *Houser v. Church*, 271 F. Supp. 3d 197, 204 (D.D.C. 2017) (citing *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002)). The Court therefore dismisses Hunter Mathis's constitutional claims, which similarly arise from the processing of his FOIA requests. *See, e.g.*, *Johnson*, 310 F.3d at 777; *Sanchez-Alanis v. Fed. Bureau of Prisons*, 270 F. Supp. 3d 215, 219 (D.D.C. 2017).

2. FOIA Claim Against the Middle District of Georgia

Hunter Mathis asserts that the Middle District of Georgia "refused to disclose the freezing of [his] accounts and assets in 1996 or 2003." 3d Am. Compl. ¶ 28. A claim under FOIA may proceed only as against an agency of the federal government. 5 U.S.C. §§ 551(1), 552(a); *see* 5 U.S.C. § 552(f). The definition of "agency" expressly excludes "the courts of the United States." 5 U.S.C. § 551(1)(B). Thus, Hunter Mathis's FOIA claim against the Middle District of Georgia must be dismissed. *See Gaydos v. Mansmann*, No. 98-5002, 1998 WL

389104, at *1 (D.C. Cir. Nov. 13, 1998) (per curiam); *United States v. Choate*, 102 F. App'x 634, 635 (10th Cir. 2004).

### 3. FOIA Claim Against the American Red Cross

Hunter Mathis claims to have "donated over a billion dollars" to the American Red Cross. 3d Am. Compl. ¶ 30. Despite such generosity, the American Red Cross allegedly "refused plaintiff['s] request for information" about his contributions. *Id*. A threshold issue the Court must resolve to address this claim is whether the American Red Cross is an "agency" for the purpose of FOIA. Although the D.C. Circuit has not addressed the issue, the Ninth Circuit concluded in *Irwin Memorial Blood Bank of S.F. Med. Soc'y v. Am. Nat'l Red Cross*, 640 F.2d 1051 (9th Cir. 1981) that it is not. *See id.* at 1052, 1057. The Court finds that opinion persuasive and similarly concludes that the American Red Cross is not an "agency" for FOIA purposes. Thus, the Court dismisses Hunter Mathis's FOIA claim against the American Red Cross.[2]

### B. Defendants' Motion for Summary Judgment

Hunter Mathis's FOIA claims that survive Defendants' motion to dismiss are directed at: (1) IRS, DoD, SEC, and SSA; and (2) the FBI. The Court considers each in turn and concludes that summary judgment must be granted in favor of each Defendant.

### 1. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing

---

[2] The Court further notes that Hunter Mathis did not provide proof that he properly served the American Red Cross in this matter. *See* Fed. R. Civ. P 4(m).

all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

"[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In FOIA cases, "to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 580-81 (quoting *Oglesby*, 920 F.2d at 68). The Court may grant summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. DOJ*, 319 F. Supp. 3d 431, 437 (D.D.C. 2018) (quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)).

"To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *DOJ v. Tax Analysts,* 492 U.S. 136, 142 (1989)). Hunter Mathis has not done so here. Rather, his opposition to Defendants' Motion largely reiterates the allegations of his complaint, *see, e.g.*, Pl.'s 2d Opp'n ¶¶ 7, 16-20, 23, and

5

opposes summary judgment without legal or factual support of any kind, *see, e.g.*, *id*. ¶¶ 13-14. In these circumstances, because Hunter Mathis has not opposed Defendants' factual assertions, the Court accepts them as unchallenged, *see MacLeod v. DHS*, No. 15-cv-1792, 2017 WL 4220398, at *9 (D.D.C. Sept. 21, 2017) (citing Fed. R. Civ. P. 56(e)(2)), "but it must address [Defendants'] legal arguments on their merits," *King v. DOJ*, 245 F. Supp. 3d 153, 158 (D.D.C. 2017) (citing *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016)).

### 2. Submissions to IRS, DoD, SEC, and SSA

FOIA requires a covered agency to "make . . . records promptly available to any person" who submits a "request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed[.]" 5 U.S.C. § 552(a)(3)(A). "An agency's disclosure obligations are not triggered, however, until it has received a proper FOIA request in compliance with its published regulations." *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 26 (D.D.C. 2008). "[I]t is well established that a requester's 'failure to comply with [such] FOIA regulations is the equivalent of a failure to exhaust[.]'" *MacLeod*, 2017 WL 4220398, at *6 (alterations after first in original) (quoting *West v. Jackson*, 448 F. Supp. 2d 207, 211 (D.D.C. 2006)). "Exhaustion of administrative remedies is generally required before seeking judicial review" under FOIA. *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam). Defendants move for summary judgment in part on the ground that Hunter Mathis failed to submit proper FOIA requests to which IRS, DoD, SEC, and SSA were obligated to respond. *See* Defs.' Br. at 11-16.[3] The Court agrees.

---

[3] Because Defendants rely on materials outside the pleadings to advance these arguments, the Court evaluates them under the standard for summary judgment. *MacLeod*, 2017 WL 4220398, at *6 n.6; *Pinson v. DOJ*, 70 F. Supp. 3d 199, 203 (D.D.C. 2014).

### a. Internal Revenue Service

Hunter Mathis alleges that Treasury and IRS "failed [to comply with his] request" about a "treaty and contract agreement . . . in March of 1996 concerning plaintiff['s] diplomatic and prosecutorial immunity for life." 2d Am. Compl. ¶ 6. Defendants argue that IRS is entitled to summary judgment because, despite four apparent efforts to do so, Hunter Mathis never submitted a proper FOIA request. *See* Defs.' Br. at 14-16.

IRS regulations require a FOIA requester to "describe the records [he seeks] in reasonably sufficient detail" so that "IRS employees . . . familiar with the subject matter of the request [might] locate the records without placing an unreasonable burden upon the IRS." 26 C.F.R. § 601.702(c)(5)(*i*); *see* 26 C.F.R. § 601.702(c)(4)(D). Generally, the requester satisfies this requirement "if [he] gives [his] name, taxpayer identification number (*e.g.*, social security number [("SSN")] or employer identification number), subject matter, location, and years at issue, of the requested records." 26 C.F.R. § 601.702(c)(5)(*i*). If IRS determines that the description of records is not sufficient, the requester must "be afforded an opportunity to refine the request." *Id*. If IRS determines that a request does not comply with its regulations, its staff must "promptly advise the requester in what respect the request . . . is deficient so that it may be resubmitted or amended." 26 C.F.R. § 601.702(c)(1)(*i*). Separate regulations apply to requests for tax returns. For example, "[w]ritten requests for a copy of a tax return and attachments or a transcript of a tax return" must be made using "IRS form 4506, 'Request for Copy or Transcript of Tax Form.'" 26 C.F.R. § 601.702(d)(1). IRS processes only those requests which fully comply with IRS regulations. 26 C.F.R. § 601.702(c)(4)(*i*).

Hunter Mathis's first submission to IRS was a request for "[c]omplete discloser [sic] of [his] financial records from 1983 to 2003 sent to [him] free of charge[.]" ECF No. 28-9

("Valvardi Decl.") ¶ 9; *id.*, Ex. 1 at 1. IRS deemed Hunter Mathis's request "imperfect" because it did not bear his signature or a notary seal, his SSN was incomplete, and he did not agree to pay the fees associated with his request. *See id*. ¶¶ 10-12; *id.*, Ex. 5. IRS responded with instructions informing Hunter Mathis that he needed to describe the records he sought in reasonably sufficient detail, establish his identity, sign his request, provide his full SSN, and agree to pay fees (or to request a waiver of fees). *Id.* ¶ 13; *see id.*, Ex. 6.

Hunter Mathis's second submission also sought "complete disclosure of [his] financial records from 1983 to 2003." *Id.* ¶ 15; *id.*, Ex. 2 at 1. It was an improvement over the first, because it bore his signature, included his SSN, and requested a waiver of fees. *See id*. ¶¶ 16-17; *id.*, Ex. 2 at 1. But IRS deemed the request "too broadly scoped to allow for a reasonable search." *Id.* ¶ 18; *id.*, Ex. 7. In its view, "tax records could be considered financial records," *id.* ¶ 18, but it was not entirely clear whether Hunter Mathis sought tax records. IRS therefore "could not determine what document, if any, would be responsive," *id.* ¶ 20, and under these circumstances it concluded that its staff "would be unable to perform a search," *id.* (internal quotation marks omitted). IRS notified Hunter Mathis in writing of its decision, and specifically told him that if he were requesting tax returns, such a request would not be processed under FOIA. *See id.*, Ex. 8. Rather, pursuant to 26 C.F.R. § 601.702(d), IRS instructed him to do so "through routine agency procedures using Form 4506." Valvardi Decl., Ex. 8.

IRS staff considered Hunter Mathis's third submission, *see id.*, Ex. 3, a duplicate of his second submission, *see id.*, Ex 9. Thus, for the same reasons specified above, IRS concluded that this submission "was not a valid request" because it failed to comply with Treasury regulations. *Id.* ¶ 29. Aside from sending Hunter Mathis a written acknowledgement of having received the third submission, *see id.* ¶¶ 27-28; *id.*, Ex. 10, IRS took no further action.

8

Hunter Mathis's fourth submission, *see id.*, Ex. 4, requested IRS to send him a copy of Form 4506-T at his address in prison. *Id.* ¶ 30. As explained above, such a form allows a requester to seek tax return information, *see id.* ¶ 20, and IRS staff understood this to be a response to the instructions IRS had sent him following his second submission, *see id.*, Ex. 11. IRS sent Hunter Mathis the form, *id.* ¶ 34, and again instructed him to follow the procedures set forth in 26 C.F.R. § 601.702(d), *see* Valvardi Decl., Ex. 8. But it does not appear that IRS has any record of receiving the form, and Hunter Mathis does not allege that he sent it. *See* Defs.' Br. at 16; 2d Am. Compl.

The Court concludes that none of Hunter Mathis's four submissions to IRS was a proper FOIA request. "[O]nly requests for records which fully comply with the [regulations] can be processed . . . ." 26 C.F.R. § 601.702(c)(4)(*i*). As IRS asserts, the first three submissions were deficient, principally because none "[r]easonably describe[d] the records [sought]." 26 C.F.R. § 601.702(c)(4)(*i*)(D). Moreover, IRS otherwise complied with its regulations by notifying Hunter Mathis "promptly in writing of any requirements which [had] not been met or any additional requirements to be met." 26 C.F.R. § 601.702(c)(4)(*i*). Finally, IRS reasonably construed Hunter Mathis's fourth submission as a request for a copy of Form 4506-T. The Court cannot conclude that IRS ran afoul of FOIA merely because it instructed Hunter Mathis to follow the routine agency procedures to request tax returns, set forth in 26 C.F.R. § 601.702(d). Therefore, IRS is entitled to summary judgment.

### b. Department of Defense

According to Hunter Mathis, DoD refused to disclose an "agreement made between the two parties in April of 1996 granting [him] diplomatic and prosecutorial immunity for life." 2d

Am. Compl. ¶ 7. DoD also allegedly "failed to answer any of [Hunter Mathis's] direct request[s] or to verify [his] military history[.]" *Id.* ¶ 11.

According to DoD, Hunter Mathis did not submit a valid FOIA request to the agency. ECF No. 28-7 ("Carr Decl.") ¶¶ 10-13. DoD determined that the Office of the Secretary of Defense ("OSD") and Office of the Chairman of the Joint Chiefs of Staff ("JS") were the places most likely to have received a FOIA request from Hunter Mathis. *Id.* ¶ 10. A search of the OSD/JS FOIA database using "Mathis," "Hunter," "Eric," "Jerome," and "Hunter-Mathis" as search terms, *id.* ¶ 12, yielded no results, *id.* ¶ 13. Thus, DoD concluded that it had "no record of having received any requests from [him]." *Id.*

In a circumstance "like this one—'where agencies allege that they were unable to find . . . plaintiffs' requests for information'—the 'agencies must demonstrate that they conducted searches reasonably calculated' to locate the request or any evidence that it was received." *Burke v. DOJ*, 298 F. Supp. 3d 119, 122 (D.D.C. 2018) (quoting *Walsh v. FBI*, 905 F. Supp. 2d 80, 84 (D.D.C. 2012)), *aff'd*, No. 12-5386, 2015 WL 1606659 (D.C. Cir. Mar. 9, 2015). Here, DoD has adequately demonstrated that it conducted a reasonable search for a FOIA request from Hunter Mathis, and that it did not find one. Therefore, it incurred no obligation to produce documents under FOIA, and the Court will grant summary judgment in favor of DoD.

### c. Securities and Exchange Commission

Hunter Mathis alleges that the SEC refused his attempts "to obtain documentation of securities, bonds, contracts, licenses or corporate affiliation[s] held by" him. 3d Am. Compl. ¶ 27. SEC identified three databases where a request from Hunter Mathis likely would have been found. ECF No. 28-5 ("Livornese Decl.") ¶¶ 2, 4. It searched the Electronic Freedom of Information Act Processing System as well as the "Tips, Complaints, and Referrals" database

using Hunter Mathis's last name. *See id*. ¶¶ 2-4; ECF No. 28-4 ("Walker Decl.") ¶¶ 2-3. The searches yielded no results. Livornese Decl. ¶¶ 3-4; Walker Decl. ¶¶ 2-3. But a search of a third database, the Investor Response Information System, located two inquiries Hunter Mathis made to SEC's Office of Investor Education and Advocacy ("OIEA"). *See* ECF No. 28-6 ("Greene Decl.") ¶¶ 2-3.

Hunter Mathis's first inquiry pertained to bank accounts he purportedly held. *See* Greene Decl. at 3-8, 12 (page numbers designated by ECF). Hunter Mathis reported to SEC that he had sent what he described as "FOIA requests" to two banks, the Five Star Credit Union and the First National Bank of Grady County, asking that each provide him with "[d]ocumentation of any deposited funds." *Id*. at 5, 7. SEC responded, explaining to Hunter Mathis that it had no jurisdiction over the banks, and suggested that he direct his "concerns to the appropriate banking regulator." *Id*. at 12. Hunter Mathis's second query pertained to his alleged efforts to redeem Treasury bonds. *Id.* at 11. Through it, he asked for information about "how to go about liquidation [sic] some of [his] bonds[.]" *See id.* But redemption of Treasury Bonds "is not under the SEC's jurisdiction," and OIEA referred Hunter Mathis to Treasury. *Id.* at 13.

SEC moves for summary judgment on the ground that it performed an adequate search which did not locate a proper FOIA request from Hunter Mathis. *See* Defs.' Br. at 11-13. The Court agrees. SEC searched three different databases, including the agency's FOIA processing system, and did not locate any such request. Moreover, neither of Hunter Mathis's two inquires that were located are properly characterized as FOIA requests. Neither, for example, sought SEC "agency records" under FOIA. *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215-16 (D.C. Cir. 2013). And an unrebutted assertion that an agency does not maintain records of the type that would be responsive to an inquiry provides an adequate basis

for summary judgment, since "[i]t is clear beyond cavil that an agency cannot improperly withhold records that it does not maintain." *MacLeod*, 2017 WL 4220398, at *11.

### d. Social Security Administration

Hunter Mathis alleges that SSA "refused [his] numerous request[s] for employment, account, payment or any history associated with [his] name and social security number," 3d Am. Compl. ¶ 19, and "refused to disclose to [him] any of his social security history, [i.e.,] money paid in or money paid out," *id*. ¶ 29.

Ordinarily, SSA "need[s] the person's full name, date of birth, and SSN" in order to locate information about him, "such as earnings or benefit information." ECF No. 28-8 ("Chyn Decl.") ¶ 5; 20 C.F.R. § 404.810(b). In this case, Hunter Mathis provided only his name; SSA had no other identifying information for him. Chyn Decl. ¶ 5. Without more information about him, SSA's Division of Earnings and Business Services could not search its records at all. *Id*. ¶¶ 6-8. It searched its eFOIA database, which "stores requests by the requesters' names," *id*. ¶ 10, but even after using Hunter Mathis's last name and several variations of his full name as search terms, SSA "did not locate any requests" from him. *Id*.

As such, SSA has adequately demonstrated that it conducted a reasonable search for a FOIA request from Hunter Mathis under FOIA and found none. It, too, is entitled to summary judgment because it has demonstrated that Hunter Mathis did not submit a proper FOIA request. *See Hand v. U.S. Dep't of Labor*, No. 16-cv-953, 2018 WL 2561038, at *2 (D.D.C. Apr. 10, 2018); *Thomas v. FCC*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008).

### 3. FOIA Requests to the Federal Bureau of Investigation

Unlike Hunter Mathis's claims against IRS, DoD, SEC, and SSA, the parties agree that Hunter Mathis submitted two proper FOIA requests to the FBI. *See* Compl. ¶¶ 7-9, 13; Defs.'

12

Br. at 5-6.  In response to these requests, the FBI conducted three searches and was unable to find any responsive records.  ECF No. 28-3 ("Hardy Decl.") ¶¶ 5-10, 25, Ex. D at 1, Ex. F at 1.  Hunter Mathis's various complaints do not specifically allege that the FBI's searches were inadequate, but his opposition to the Motion appears to do so, insofar as it argues that the FBI "continues to rely upon David M. Hardy's outdated [G]oogle search dated and done before [Hunter Mathis] filed leave to amend and gave support of why said info may not be located in David M. Hardy's search and where support of said information would be located within thier [sic] ranks."  Pl.'s 2d Opp'n ¶¶ 9-10; *see also id.* ¶ 25.  For the reasons set forth below, the Court concludes that the FBI's search was adequate, and therefore will grant summary judgment on its behalf.

On or about January 1, 2016, Hunter Mathis submitted a FOIA request to the FBI for the following information:

> [A] full & complete investigation on my (Escrow account), through and by my Social Security No. [redacted], this specific account was established through (I.B.M[.]), and [I'm] trying to obtain my property, and verification of all my lost documentation.

Hardy Decl., Ex. A; *see id*. ¶ 5 n.1; Compl. ¶ 8.  Subsequently, he provided his address, date of birth, place of birth, and Social Security number to the FBI.  Hardy Decl. ¶ 7; *see id*., Ex. C at 1.

On or about March 1, 2016, *id*. ¶ 9, Hunter Mathis submitted a second FOIA request to the FBI, this one seeking "the full disposition on why [his] accounts were federally frozen . . . by [a] Regional Agent from Albany, Georgia . . . but never remitted, prosecuted[,] resolved [or] disposed of," *id*., Ex. E.

The FBI's Central Records System ("CRS") "is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions."  Hardy

13

Decl. ¶ 15. According to the FBI's declarant, agency staff conducted three sets of searches in CRS for records responsive to Hunter Mathis's FOIA requests. On March 8, 2016, FBI staff "conducted a CRS index search for responsive main file records," *id.* ¶ 23, meaning an index search for records carrying the name of an individual or other designated subject of a file, *id.* ¶ 17(a). FBI staff used "four variations of [his] name"—"Eric Jerome Hunter Mathis," "Eric Jerome Mathis," "Eric Hunter Mathis," and "Eric Jerome Hunter"—in order to identify files both responsive to his request and subject to FOIA. *Id.* ¶ 23. Moreover, the search function employed by FBI staff also used "a three-way phonetic breakdown of [each of these] names" as additional search terms. *Id.* In addition, FBI staff used Hunter Mathis's date of birth and SSN "to facilitate the identification of responsive records." *Id.* The FBI did not locate any responsive records. *Id.*

After receiving the second FOIA request, staff conducted another CRS search, both to confirm the results of the first search and to identify any potentially responsive cross-reference records, *id.* ¶ 24, meaning records that merely *mention or reference* an individual whose information is contained in separate "main" file, *id.* ¶ 17(b). The FBI "located no responsive records (either main files or cross-reference records) with this additional search." *Id.* ¶ 24.

After receiving notice of this lawsuit, the FBI staff conducted a third CRS search, both "verifying [the] previous search results [and] seeking potentially responsive main files and cross-reference records." *Id.* ¶ 25. This, too, was a "three-way phonetic search," and it used nine variations of Hunter Mathis's name as search terms. *Id.* No responsive records were found. *Id.*[4]

---

[4] The FBI also informed Hunter Mathis that it could neither confirm nor deny the existence of records "tend[ing] to indicate whether [he] is or ever was on any government terrorist watch list." Hardy Decl. ¶ 8. Hunter Mathis denies any interest in any individual's placement on a watch list, *see* Pl.'s 2d Opp'n ¶ 26, and so the Court need not address this matter further. *See*

14

"[T]o obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Mobley*, 806 F.3d at 580 (quoting *Oglesby*, 920 F.2d at 68). "The Court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998) (citation omitted) (quoting *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis omitted). The Court may grant summary judgment "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch*, 319 F. Supp. 3d at 437 (quoting *Judicial Watch*, 726 F.3d at 215). Agency affidavits are "accorded 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 535 F. Supp. 2d 157, 161 (D.D.C. 2008) (quoting *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Here, Defendants argue that summary judgment in the FBI's favor is warranted because it conducted searches reasonably calculated to locate records responsive to Hunter Mathis's FOIA requests. *See* Defs.' Br. at 7-8. Hunter Mathis alleges that the FBI denied his FOIA requests

---

*Donoghue v. Office of Info. Policy, DOJ*, 157 F. Supp. 3d 21, 25 n.3 (D.D.C. 2016) (declining to address the FBI's reliance on Exemption 7(E) where the requester "did not seek information as to the existence of his name on a watch list . . . or request information about investigative techniques or methods"); *Ryan v. FBI*, 113 F. Supp. 3d 356, 363 n.5 (D.D.C. 2015).

improperly, but he does not point to any facts to support his argument. *See* Compl. ¶¶ 7-9; Am. Compl. ¶ 12. Indeed, both of his oppositions are largely unintelligible, Pl.'s 1st Opp'n; Pl.'s 2d Opp'n, and the only specific challenge he makes to the FBI's responses to his inquiries is that they were allegedly based on outdated internet searches. Pl.'s 2d Opp'n ¶¶ 9-10, 25.

The Court concludes that the FBI is entitled to summary judgment because it conducted an adequate search. According to David Hardy, the Section Chief of the Record/Information Dissemination Section, "given [Hunter Mathis's] request[,] . . . such information would reasonably be expected to be located in the CRS." Hardy Decl. ¶¶ 1, 26. In fact, Hardy declared that CRS is "the only record system where records about [Hunter Mathis] would likely be maintained, based on the information [he] provided." *Id.* ¶ 26. The FBI searched that database three separate times for variations on Hunter Mathis's name, DOB, and SSN, and did not find any records. *Id.* ¶¶ 23-26. The Court notes that this is not entirely surprising, given that Hunter Mathis is apparently incarcerated in state prison, Compl. ¶ 3, and nowhere does he allege that he was ever the subject of a federal investigation or prosecution. And Hardy's declaration belies Hunter Mathis's unsupported assertion that the agency relied on outdated internet searches to fulfill its FOIA obligations. Thus, the Court concludes that the FBI has met its burden under FOIA, and summary judgment in its favor is warranted.[5]

### III. Conclusion

For the reasons explained above, the Court will dismiss Hunter Mathis's constitutional claims, as well as his claims against the United States District Court for the Middle District of

---

[5] While Defendants' Motion was pending, Hunter Mathis also filed a Motion for Summary Judgment. *See* ECF No. 37. But his motion simply reiterates the allegations in his various complaints. As such, and for the reasons set forth in this Opinion, he has failed to identify a genuine issue of material fact that precludes granting summary judgment for Defendants. *See* Fed. R. Civ. P. 56(a). Thus, Hunter Mathis's motion will be denied.

Georgia and the American Red Cross.  The Court will also grant summary judgment in favor of IRS, DOD, SEC, SSA, and the FBI, and deny Hunter Mathis's motion for summary judgment in its entirety.  A separate Order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: September 27, 2018